**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSHUA GIBRAN MAYWEATHER,<br>Plaintiff<br>v.<br>NICOLE FISHER, et al.,<br>Defendant[s] | Case No.: 3:26-cv-00383-MMD-CSD<br>**Order**<br>Re: ECF No. 1, 1-1 |

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1).

**I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also “submit a certificate from the institution certifying the amount of funds currently held in the applicant’s trust account at the institution and the net deposits in the applicant’s account for the six months prior to the date of submission of the application.” LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, “the certificate must show the account’s activity for this shortened period.” LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month’s income credited to the prisoner’s account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner’s account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff’s certified account statement indicates that he had no balance and no monthly deposits. Plaintiff’s application to proceed IFP is therefore granted. Plaintiff will not be required to pay an initial partial filing fee. However, whenever his institutional account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month’s income credited to his account until the $350 filing fee is paid.

/ / /

/ / /

## II. SCREENING

### A. Standard

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*,

395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint, filed pursuant to 42 U.S.C. § 1983, names Nicole Fisher, a cashier at a 7-11 convenience store, Dr. Czerniski, a psychiatrist at Lake's Crossing, and Forensic Officer Herc, also of Lake's Crossing, as defendants. (ECF No. 1-1 at 1-3.)

Plaintiff asserts that Fisher lied when she told police that Plaintiff had been sleeping in an outdoor plaza, which resulted in his arrest and being held in custody in the state hospital for longer than legally permissible, due to illegal disciplinary and administrative proceedings. (*Id.* at 3.)

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

To obtain relief pursuant to section 1983, a plaintiff must establish a "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

In Claim 1, Plaintiff asserts a violation of his "right not to be kidnapped by citizens" under the Fourth Amendment. (*Id.* at 4.) Plaintiff alleges that Fisher called police and falsely told them that he had been sleeping in the 7-11's parking area when he had not actually been doing so, resulting in Plaintiff's arrest and incarceration for more than ten months. When Plaintiff wrote Fisher a letter asking her to tell the truth, she refused. (*Id.*)

The Fourth Amendment guarantees a citizen's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. But this claim is brought against Fisher, a private party. Private parties do not generally act under color of state law for purposes of § 1983. *See O'Handley v. Weber*, 62 F.4th 1145, 1155-56 (9th Cir. 2023) (stating that only in "exceptional cases" will a private entity be treated as a state actor for constitutional purposes), *cert. denied*, 144 S. Ct. 2715 (2024).

To be considered a state actor, a private party must meet either: "(1) the public function test, (2) the state compulsion test, (3) the nexus test [or] (4) the joint action test." *Id.* at 1157. "These tests are interrelated, and they are designed to answer the same key question: whether the

conduct of a private actor is fairly attributable to the State." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1109 (9th Cir. 2022). A party may be treated as a state actor where "there is 'pervasive entwinement of public institutions and public officials in [the private actor's] composition and workings,'" or where "government officials have 'exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *O'Handley*, 62 F.4th at 1157.

Plaintiff's complaint does not allege – and provides no facts to support a plausible claim – that Fisher was a state actor. The only allegation is that she pressed false charges. But "[m]erely complaining to the police or swearing out an affidavit that forms the basis of an arrest cannot alone constitute joint action." *Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195, 1213 (D. Or. 2024) (citing *O'Handley*, 62 F.4th at 1160). "'[C]onsultation and information sharing during [an] investigation' alone also does not suffice to support joint action." *Id.* (quoting *O'Handley*, 62 F.4th at 1160). As the complaint does not allege any facts that would support a claim that Fisher should be considered a state actor, the Fourth Amendment claim against her will be dismissed. The dismissal will be without prejudice, with leave to amend.

In Claim 2, Plaintiff again asserts a violation of his "right not to be kidnapped by citizens" under the Fourth Amendment and alleges that Dr. Czerniski lied by claiming Plaintiff was delusional and incompetent, that he asked him questions about his defense, and that he refused to ask Plaintiff "the test questions" to get him "back to jail-and-criminal-court". (*Id.* at 5.)

The court understands Plaintiff's claim might be that Dr. Czerniski refused to give him either a competency evaluation or treatment to restore competency. Plaintiff also complains that Dr. Czerniski asked him questions about his defense.

Neither of these allegations states a Fourth Amendment unreasonable search or seizure claim. Nor do the doctor's questions about Plaintiff's defense violate any constitutional right.

Dr. Czerniski's possible refusal to conduct a competency evaluation and/or restoration of Plaintiff could potentially implicate the Fourteenth Amendment Due Process clause, but the complaint lacks sufficient facts to state a plausible claim at this time. *See Trueblood v. Wash. State Dep't of Social & Health Servs.*, 822 F.3d 1037, 1043 (9th Cir. 2016); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003); *Melnek v. Las Vegas Metro. Police Dep't*, No. 2:23-CV-01303-GMN-MDC, 2025 WL 212809, at *2 (D. Nev. Jan. 15, 2025) ("Restorative treatment for incapacitated criminal defendants is a Fourteenth Amendment Due Process right. . . . When a court finds a defendant incompetent, 'the judge shall order the sheriff to convey the defendant forthwith, together with a copy of the complaint, the commitment and the physicians' certificate, if any, into the custody of the Administrator or the Administrator's designee for detention and treatment at a division facility that is secure.' NRS 178.425(1)."). Specifically, the complaint is not entirely clear as to what Dr. Czerniski refused to do and, more importantly, how that impacted Plaintiff's confinement. Accordingly, at this time the complaint fails to state a claim against Dr. Czerniski. Claim 2 will be dismissed, with leave to amend.

Finally, in Claim 3, Plaintiff asserts a violation of his right against cruel and unusual punishment related to "disciplinary proceedings." (*Id.* at 6.) Plaintiff alleges that Herc told him he could not call his friend, "when the rules of Lake's Crossing Center say that you are encouraged to call friends," and as a result, Plaintiff gave his debit card to his nephew to help him instead of to his friend, and his nephew eventually stole all of Plaintiff's money. (*Id.*)

The complaint does not explain how disciplinary proceedings fit into the picture, so it fails to state any claim in that regard.

As a pretrial detainee, Plaintiff's claim of cruel and unusual punishment arises under the Due Process Clause of the Fourteenth Amendment. *Hatter v. Dyer*, 154 F. Supp. 3d 940, 944 (C.D. Cal. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1971)). "Prison officials may be liable for cruel and unusual punishment if they 'acted with deliberate indifference to a substantial risk of serious harm.'" *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 924 (9th Cir. 2017). The facts as pled do not support that Herc's refusal to allow Plaintiff to make a phone call posed a "substantial risk of serious harm." The complaint therefore does not plead Fourteenth Amendment cruel and unusual punishment claim against Defendant Herc.

Finally, Plaintiff identifies no "state-created liberty interest in using a telephone during his pretrial confinement," and there is otherwise no standalone constitutional right for pretrial detainees to use the telephone, so the complaint also does not state a claim in this regard. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002); *see also Floyd v. Santa Clara Dep't of Corr.*, No. 22-CV-00750-CRB, 2024 WL 4801852, at *5 n.5 (N.D. Cal. Oct. 10, 2024), *aff'd*, No. 24-6866, 2025 WL 3012645 (9th Cir. Oct. 28, 2025), *cert. denied sub nom. Floyd v. Cofferati*, 146 S. Ct. 2623 (2026) ("Floyd also appears to suggest that he has a freestanding Fourteenth Amendment right to use a phone. . . . The Ninth Circuit rejected this argument in Valdez v. Rosenbaum, 302 F.3d 1039, 1045–48 (9th Cir. 2002), so the Court does not consider it further.").

Claim 3 will also therefore be dismissed, with leave to amend.

## III. CONCLUSION

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**, and Plaintiff will not be required to pay an initial partial filing fee. However, whenever his institutional account exceeds $10, Plaintiff is required to make monthly payments in the amount of 20 percent of the preceding

month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk must **SEND** a copy of this Order to the attention of the finance department at Lakes Crossing Center, 500 Galletti Way Sparks, NV 89431.

(2) The Clerk will **FILE** the complaint (ECF No. 1-1).

(3) The Complaint is **DISMISSED WITH LEAVE TO AMEND**.

(4) The Clerk will update Plaintiff's mailing address to **3343 Pasadena Ave., Long Beach, CA 90807**, as requested on the complaint form, and send a copy of this order to Plaintiff at both the Long Beach address and the Lake's Crossing address. (*See* ECF No. 1-1 at 1.)

(5) The Clerk shall **SEND** Plaintiff the instructions for filing a civil rights complaint by an incarcerated individual and form civil rights complaint by an inmate.

(6) Plaintiff has **30 DAYS** from the date of this Order to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall check the box for the first amended complaint on the court's form civil rights complaint. If Plaintiff fails to file an amended complaint within the 30 days, the action may be dismissed.

**IT IS SO ORDERED**.

Dated: October 9, 2026

Craig S. Denney
United States Magistrate Judge